Argued and submitted February 6, the decision of the Court of Appeals and the circuit court's order of suppression reversed April 17, 1990

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## CARL EDWARD HART,
*Respondent on Review.*

### (CC 85-1192; CA A50370; SC S36562)

791 P2d 125

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the

petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Laura Graser, Portland, argued the cause for respondent on review.

JONES, J.

## JONES, J.

The issue is whether under OEC 403[1] a defendant in a criminal trial is entitled to have certain statements excluded that he made to a police officer in a pre-polygraph test interview.

We take the facts from the Court of Appeals opinion. Defendant was charged with first degree rape. Prior to the indictment, Detective Stephenson came to defendant's place of business to investigate defendant's role in the alleged rape. He advised defendant that he was not under arrest, that no charges were pending against him, and that he was free to leave at any time. Defendant acknowledged having had sexual intercourse with the alleged victim, but said that the encounter was entirely consensual. At the conclusion of the interview, Stephenson asked defendant if he would be willing to submit to a polygraph to confirm his story, to which defendant agreed.

Ten days later, Sergeant Plester of the Oregon State Police conducted a polygraph examination. As part of the examination, he conducted a standard pre-polygraph test interview. In the interview, defendant's account of his encounter with the victim differed from the one that he gave in his earlier interview with Stephenson, although he again maintained that the encounter was consensual.

The ruling at issue in this case arose at a pretrial hearing on defendant's motion to suppress his out-of-court statements. Defendant moved the trial court for an order excluding all testimonial and physical evidence obtained from the defendant because the evidence was allegedly illegally, improperly, and involuntarily obtained. Defendant argued that if the pre-polygraph test statements to Sergeant Plester were admissible as proposed by the state, "the defendant could not adequately cross-examine and confront the polygrapher regarding the circumstances of the statement, and thus the defendant could not effectively argue to the jury that the

---

[1] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

statement was involuntary." He further argued that even if the jurors were not told the results of the polygraph test, they would infer that he had failed it from the fact that he was on trial for rape. The state contended that the exchange from the interview could be offered without identifying the circumstances under which it took place.

Following the procedures set forth in *State v. Brewton*, 238 Or 590, 603, 395 P2d 874 (1964),[2] the trial court ruled that defendant's statements were voluntary. In making its pre-trial ruling on what evidence should be admitted before the jury on the voluntariness of the statements, however, the trial court suppressed the defendant's statements to Sergeant Plester on the theory that a jury could not pass upon the voluntariness of the statements without being unduly prejudiced by what the trial court evidently regarded as the inevitable mention of the fact that the statements were made prior to the administration of a polygraph examination. The state appealed that ruling to the Court of Appeals, which affirmed *State v. Hart*, 98 Or App 305, 779 P2d 182 (1989). We reverse the decision of the Court of Appeals.

To understand this case, it is necessary first to review briefly this court's jurisprudence surrounding polygraph evidence. In *State v. Green*, 271 Or 153, 169, 531 P2d 245 (1975), this court stated:

> "[I]t is our opinion that the danger of prejudice from the impact of [evidence of the results of a polygraph examination and evidence relating to the details of a polygraph examination] upon the question of the credibility of a defendant is so great as to ordinarily outweigh the probative value of such evidence as one or more of the circumstances which the state may properly offer in evidence in laying the initial foundation

---

[2]

"The court in the absence of the jury should * * * hear all the evidence relevant to the voluntariness of the confession. The burden will rest on the state to prove to the satisfaction of the court that the confession was voluntary. If the court finds that the confession was voluntary, it shall note its finding in the record and admit the confession in evidence. Thereafter, as under our present practice, the state must again establish the voluntariness of the confession before the jury and the jury will hear all the evidence offered on that issue. The jury will be instructed that it has the duty to determine as a question of fact, first, whether the confession was voluntary, and second, if it was voluntary whether it was true, and that the issue of voluntariness shall be determined without regard to the truth or falsity of the confession."

for the admission of a confession during the trial of a criminal case."

The court, however, did not recognize that "there may be circumstances relating to the conduct of a polygraph examination prior to giving of a confession which the defendant may desire to urge as grounds in support of a contention that the confession was not given voluntarily, but was the product of coercion or psychological pressure," which is exactly what the defendant claims in this case. If so, *Green* continued,

> "[W]hen the confession [or statement] is offered in evidence, the defendant then objects to the confession upon the ground that the confession was not voluntary because of a preceding polygraph examination, the state may then offer in evidence not only the fact that the confession was given following a polygraph examination, but also such details of the polygraph examination, including evidence which may reveal the results of the examination, as may be relevant upon the question whether the confession was given voluntarily." 271 Or at 171.

■   Therefore, under *Green,* if a defendant chooses to object to the admission in evidence of a confession or his out-of-court statements upon the ground that the statements were not voluntary because of a polygraph examination, the state in rebuttal is not precluded from offering the statements or that they originated in a polygraph examination. As stated in *Green,* "the choice whether evidence relating to a * * * polygraph examination is to be received is ordinarily a choice to be made by the defendant." 271 Or at 173.

Nine years after the court's decision in *Green,* this court ruled in *State v. Brown,* 297 Or 404, 445, 687 P2d 751 (1984), that polygraph evidence is not admissible, over proper objection, in any civil or criminal trial in this state. In *State v. Lyon,* 304 Or 221, 744 P2d 231 (1987), we rejected the admissibility of such evidence pursuant to a preexamination stipulation. In *Lyon,* this court broadly stated "that polygraph evidence is inadmissible for any purpose in any legal proceeding subject to the rules of evidence under the Oregon Evidence Code * * *." 304 Or at 233-34.

■   Neither *Brown* nor *Lyon* addressed the issue that is before us now, *viz.,* whether evidence of the fact of taking a polygraph examination — rather than results of such an examination — is *per se* inadmissible and so prejudicial that

any mention of it would justify suppressing any statements by a defendant made before, during, or immediately after such an examination when offered by the defendant on the issue of voluntariness. In *Lyon,* we were concerned with stipulated polygraph results, not that a statement or admission emanated from a polygraph examination.

■ As mentioned in the recitation of facts, the state in this case, following the command of *Green,* offered to "sanitize" defendant's pre-polygraph test statements to exclude any reference to polygraphy, polygraph examinations, or results. Specifically, the state offered to eliminate any reference to the fact that one of the statements the state proposed to offer was made preparatory to a polygraph examination.[3] It was the defendant, not the state, who asserted that he was required to elicit the circumstances surrounding the statements, including reference to the polygraph examination, in order to show the jury that his statements were involuntary. Thus, it was defendant who had the choice to offer evidence relating to the polygraph examination. The state never contended that it would object to any such offer under *Brown* or *Lyon. Brown* and *Lyon* were aimed at time consumption and the results of a polygraph examination as misleading, not to the mere fact that an examination was underway when other relevant facts occurred, namely that the defendant made damaging statements during an event that normally the judge would never hear.

---

[3] Both the statement made to Detective Stephenson and the statement made to Sergeant Plester were relevant and not barred by the hearsay rule because they were statements by a party opponent under OEC 801(4)(b)(A). Further, in the event that defendant followed through on his plan to testify as to facts which he claimed made his pre-polygraph test statement involuntary, both statements would be admissible to impeach his credibility under OEC 613. *See* R.E. Jones, *Impeachment of Witnesses,* in Evidence (Oregon State Bar Committee on Continuing Legal Education) § 32.34 *et seq.* (1986); Kirkpatrick, Oregon Evidence 403 (1989).

OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

OEC 801(4)(b)(A) provides:

"A statement is not hearsay if:

"* * * * *

"(b) The statement is offered against a party and is:

"(A) That party's own statement, in either an individual or a representative capacity[.]"

This situation is no different than if the defendant made the statements while sitting on death row awaiting execution. While the state might not be able to bring out the location of the defendant at the time he made the statements to the trier of fact, because of the unfair prejudicial effect of such evidence, but the statements certainly would not be suppressed because the defendant might have to elect to bring out such evidence to show that the statements were made in a coercive environment. Defendant had the option to bring out that the interviewer was a polygraph operator, rather than just a police officer, or that the statements were made in anticipation of a polygraph examination, in an attempt to show that the statements were involuntary or otherwise inadmissible. Any adverse inference to defendant would come from his own examination, not from the evidence proffered by the state.

The trial judge suppressed the statements, relying on OEC 403, ruling that the probative value of the state's evidence would be outweighed by the prejudicial effect of the evidence the defendant might be forced to produce. His reliance on OEC 403 was misplaced. In applying OEC 403 to the state's proposed "sanitized" evidence, there was no danger of unfair prejudice, confusion of issues, misleading of the jury or any other consideration addressed by OEC 403. The decision to exclude the sanitized statements under OEC 403 was, therefore, error. Instead, the sanitized statements were clearly admissible. As Judge Edmonds correctly pointed out in his dissenting opinion in the Court of Appeals, any attempt by defendant to explain the circumstances of the statements must be undertaken at defendant's risk, weighing the defense's own assessment of the value of such further evidence versus the risk that the jury may infer that defendant failed a polygraph examination. In this case, neither party offered evidence of the *results* of the polygraph examination, which would be precluded under *Brown* and *Lyon*. The only evidence that would involve a polygraph examination would be the fact that statements were made during or prior to an examination. *Green, Brown* and *Lyon* were essentially concerned with evidence of the results of polygraph examinations. Those decisions do not preclude the evidence proffered by the state in this case.[4]

---

[4] Wright and Graham, Federal Practice and Procedure 235, § 5215 (Supp 1990), in

In an adversarial system, a party should not be restrained from offering admissible evidence simply because the other party might be forced to elect in response to bring in evidence which was not offered against him and which might be adverse to him. Defendant in this case can viably describe his conversation with the police officer without mentioning a polygraph examination. He certainly was not entitled to suppression of his voluntary inconsistent statements merely because they were made during the pre-polygraph test interview of such an examination.

The decision of the Court of Appeals and the circuit court's order of suppression are reversed.

---

addressing this interesting question, discuss the case of *United States v. Boyle*, 675 F2d 430, 433 n 3 (1st Cir 1982), in which the defendant sought to invoke Rule 403 to exclude evidence of his use of an alias because his explanation would be that he was seeking to avoid prosecution for other crimes, not the charged crime. That federal appellate court was not impressed with the argument that Rule 403 should be applied when the prejudice arises from evidence that would serve to rebut the proffered evidence. We also are not impressed with this argument.