Argued and submitted December 13, 1990, reversed and remanded
November 13, 1991, reconsideration denied March 4, petition for review
allowed April 28, 1992 (313 Or 209)

STATE OF OREGON,
*Appellant,*

*v.*

SCOTT DEAN HARBERTS,
*Respondent.*

(89-557; CA A64219)

820 P2d 1366

Rives Kistler, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Wm. Timothy Lyons, Oregon City, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

RICHARDSON, P. J.

* Joseph, C. J., *vice* Newman, J., deceased.

## RICHARDSON, P. J.

The state appeals the suppression of defendant's statements during and after a polygraph test. ORS 138.060(3). We reverse and remand.

Defendant was charged with three counts of aggravated murder in the death of two-year old Kristina Hornych. The child had been beaten, raped and sodomized. The death was caused by head injuries. Defendant and the victim lived in the house of the victim's father. Defendant claims to have found the child's body in the bathroom around 3 a.m., July 14, 1989. Defendant awakened the father and the father's domestic partner and showed them Kristina's body. The paramedics and the police were called while defendant attempted to revive the child. When the paramedics arrived and took over the resuscitation attempt, defendant repeatedly interfered with them until the police physically removed him from the area. Defendant became agitated and pushed a police officer, who then arrested him for harassment.

Defendant was taken to the county jail. At 5:53 a.m., Detectives Huiras and McBride spoke with him in the library of the jail. They advised him of his rights, and defendant said that he understood them and was willing to talk with them. He was asked what had happened and responded that he had gone to bed around midnight, that he woke up around 3 a.m. to use the toilet and found the child lying on the floor. He was asked to take a polygraph examination, and he agreed. The examination was conducted about noon by Detective Harvey, who introduced herself as a "polygraph examiner."

Defendant was advised that he did not have to take the examination and that, although the results of the examination could not be used as evidence, anything that he said could be used. He was then readvised of his rights. He signed a form indicating that he understood his rights, including those relating to a polygraph examination. Harvey then administered the examination. During and after the examination, defendant made a number of inculpatory statements, the suppression of which is the subject of the state's appeal.

The trial court found that the statements were involuntary, because defendant was not told that Harvey held only an intern polygraph examiner's license. The court also found

that the post-examination statements were involuntary, because defendant had not been fully informed regarding his performance on the polygraph test before making the statements. The court also found that, even if defendant's post-test statements were voluntary, it was impossible to separate them from the polygraph test or to "sanitize" them without changing their meaning. Accordingly, the court said, admission of the sanitized statements would confuse or mislead the jury. The court, therefore, excluded the statements under OEC 403. The state challenges all three rulings.

Defendant presented evidence that, when Harvey administered the polygraph test, she was licensed as an intern-trainee, not as a general polygraph examiner. The trial court found that her reference to herself as a "polygraph examiner" carried with it an "implied representation * * * that she was an expert, fully licensed polygraph examiner" and that her failure to correct that implication could well have "impacted [sic] defendant's consent to participate in the polygraph examination" and his subsequent statements. The trial court also found that Harvey's failure to disclose the exact nature of her qualifications was inadvertent and was not motivated by an intent to deceive.

Harvey's description of herself as a "polygraph examiner" was accurate. OAR 259-20-005(7) defines "polygraph examiner" as

> "a person who purports to be able to detect deception or verify the truth of statements through the use of instrumentation or of a mechanical device and licensed as such under the [Polygraph Examiner's] Act."

ORS 703.060 provides that "[t]here shall be two types of polygraph examiner licenses," a trainee or intern license and a general license. A person holding a general license may administer specific issue examinations, ORS 703.060(2), as may a person holding a trainee or intern license. OAR 259-20-010(9)(c). The intern license that Harvey held made her a "polygraph examiner" under ORS 703.060 and OAR 259-20-010(9)(c); she was qualified to conduct the examination that she conducted in this case.

The problem, in the trial court's view, was not that Harvey's statement was inaccurate, but that it was

incomplete. We disagree. The trial court appears to have engrafted a disclosure requirement onto the test for voluntariness. It asked whether the defendant's decision to take the examination or to speak to the officers after the polygraph test might have been different had he been informed of additional information. Voluntariness does not turn on whether defendant would have made a different decision had he been provided with additional information, but only on whether the police coerced or misled him to make the choice that he did. *See State v. Vu,* 307 Or 419, 424-25, 770 P2d 577 (1989).

■   In *State v. Clifton,* 271 Or 177, 531 P2d 256 (1975), the defendant confessed after the polygraph examiner told him that he had lied. The defendant argued on appeal that his statements were coerced, because he "believed in" the polygraph and did not know that it is not completely reliable. The court rejected his claims and held that his confession was voluntary. The fact that the defendant may have attributed greater reliability to the polygraph than it perhaps deserved did not render his confession involuntary. Similarly, defendant's asserted reliance on the reliability of the polygraph test results due to Harvey's "implied" expert qualifications do not render his statements involuntary. Failure to disclose the exact scope of her qualifications in no way coerced defendant into making the statements that he made.

■   The trial court also found that Harvey's failure to apprise defendant fully of his performance on the polygraph examination affected the voluntariness of his statements after the examination. Again, we do not agree. Defendant was informed, in effect, that he had failed the test. He does not argue that that information was false.[1] Rather, he maintains that, had he been supplied with more details, he might not have responded as he did to the police in the aftermath of the test. Even assuming the correctness of defendant's underlying legal premises, we see no logical connection between the facts and his conclusion. However much additional detail he

---

[1] There was evidence that all aspects of the examination conducted by Harvey complied with standard polygraph procedures and that her supervisor had "checked out all three charts and agreed with [her results]." Her technique of confronting a defendant with the *results,* not with a detailed analysis of his performance, is standard. There is no evidence that the police used coercive testing procedures to extract incriminating statements from the defendant.

may have been given, the bottom line would have remained that, in the officer's opinion, the test disclosed that he was lying. It is impossible to know whether the additional information would have affected defendant's responses. However, the failure to provide him with more information neither induced nor coerced his statements and, as a matter of law, they were not involuntary.

We turn to the trial court's third reason for suppressing defendant's statements. It ruled that, even if defendant's statements were voluntary, they still should be excluded under OEC 403, because they would be misleading to the jury. It reasoned that the statements "were inextricably linked and wedded to defendant's understanding of the results of the polygraph and to what Detective Harvey told [him]." The court concluded that the statements would therefore be misleading without an explanation of that context.

The state could not introduce direct evidence that the statements were made in the context of and relating to a polygraph examination. *State v. Brown,* 297 Or 404, 687 P2d 751 (1984). However, the trial court erroneously concluded that defendant could also not be allowed to introduce evidence of the polygraph examination under the principle that "polygraph evidence is inadmissible for any purpose in any legal proceeding subject to the rules of evidence under the Oregon Evidence Code." *State v. Lyon,* 304 Or 221, 233-34, 744 P2d 231 (1987). In reaching that conclusion, the trial court determined that the earlier case of *State v. Green,* 271 Or 153, 531 P2d 245 (1975), could no longer be viable in light of *Brown* and *Lyon.* The court held in *Green* that, although the state could not introduce evidence concerning a polygraph examination either to establish whether a defendant was telling the truth or to establish the voluntariness of a confession, the evidence might be admissible if the defendant objected to the introduction of the confession on the ground that the polygraph examination was coercive. Also, relying on our opinion in *State v. Hart,* 98 Or App 305, 779 P2d 182 (1989), *rev'd* 309 Or 646, 791 P2d 125 (1990), the trial court concluded that, as a matter of law, the statements were more prejudicial than probative because, without evidence of the polygraph examination, there could be no effective cross-examination regarding, or explanation of, the statements.

Our decision in *Hart* was reversed after the trial court made its ruling. The Supreme Court made it clear in *Hart* that its decision in *Green* was, like Lazarus,[2] still very much alive and explained that an OEC 403 analysis should focus solely on the sanitized statements, without reference to the prejudicial evidence that a defendant claims must be introduced in order to mitigate a statement's impact. 309 Or at 652-53. In discussing *United States v. Boyle,* 675 F2d 430 (1st Cir 1982), the court observed:

> "That federal appellate court was not impressed with the [defendant's] argument that Rule 403 should be applied when the prejudice arises from evidence that would serve to rebut the * * * evidence [proffered by the state]. We also are not impressed with this argument." 309 Or at 652-53, n 4.

The court accordingly concluded that the sanitized statements in *Hart* were not themselves unduly prejudicial and that "any attempt by defendant to explain the circumstances of the statements must be undertaken at defendant's risk, weighing the defense's own assessment of the value of such further evidence versus the risk that the jury may infer that defendant failed a polygraph examination." 309 Or at 652.

■ Defendant argues that the rule in *Hart* should be applied only when a defendant seeks to introduce polygraph evidence to challenge the voluntariness of his statements and not when the evidence is introduced to provide the context for statements that would otherwise be misleading. We see no reason to limit the rule. *Hart* deals with the admissibility of sanitized statements. A defendant's response or non-response to that evidence cannot be known at the stage that *Hart* holds it to be admissible. The decision clearly means that the sanitized evidence is admissible, regardless of what the defendant might do or not do in response.

■ The final issue is whether the statements can be sanitized, *i.e.,* whether they can be introduced in such a way as to prevent any reference to the fact that defendant made them in the setting of a polygraph examination. All of the statements that are in the record are capable of being "sanitized." Indeed, as far as we can tell, the statements that the state seeks to introduce do not actually refer to the polygraph

---

[2] Luke 16:19-31.

examination. Although a few of the statements were made in response to questions or statements that referred to the polygraph, we see no insurmountable problem in editing those statements or questions to avoid any reference to the polygraph test.[3]

Reversed and remanded.

---

[3] If the state seeks to introduce statements other than those in the record, the trial court must, of course, independently assess their admissibility in the light of what we have said in this opinion.