Argued December 2, 1974, affirmed January 30, 1975

# STATE OF OREGON, *Respondent, v.*
# BRIAN LEE CLIFTON, *Petitioner.*

### 531 P2d 256

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, BRYSON and SLOPER, Justices.

TONGUE, J.

Defendant was convicted of murder for the killing of the manager of a Portland motel. He appeals upon the ground that the trial court erred in receiving in evidence a confession because it was not given voluntarily, but was produced by psychological coercion resulting from the use of a polygraph examination or "lie detector" test. The Court of Appeals affirmed the conviction, 19 Or App 147, 526 P2d 495 (1974). We also affirm.

At the beginning of the trial defendant moved to suppress the offer in evidence of his oral and written confessions. A hearing was then held at which testimony was received by the trial court, as required by our decision in *State v. Brewton,* 238 Or 590, 600-03, 395 P2d 874 (1964).

It appears from the testimony offered at that hearing that after defendant's arrest and after being informed of his constitutional rights he was then in-

terrogated by the police for about two hours. He then agreed to submit to a polygraph examination. According to defendant, he was at that time extremely fatigued from lack of food and sleep during the period prior to his arrest and asked for a lawyer several times during that interrogation.

Upon the completion of the polygraph examination, defendant was told by the officers that it showed that he was "deceptive." According to defendant, he was also told by the police repeatedly that he might have "done it" because he "liked to kill" or for sexual reasons; that this is what his mother might think when she "found out," and that defendant became angry at the continued reference to sexual conduct. Much of defendant's testimony was denied by the police officers.

In any event, defendant then broke down and cried and confessed to the killing, saying that he went to rob the motel and killed an innocent person. A detailed confession was then "taped," and also transcribed and signed.

At the conclusion of the hearing the trial court denied defendant's motion to suppress. The court then entered "special findings" that defendant had been effectively advised of all of his constitutional rights; that he thereafter knowingly waived such rights; that his confessions were "freely and voluntarily made and were not the product of any promises, threats, duress or coercion of any nature whatsoever" and that "the procedure(s) used in conducting the polygraph examinations were fair and reasonable and did not constitute * * * a coercion process."

Despite these findings of fact by the trial court,

defendant contends that "the psychological coercion resulting from the use of a polygraph examination prevented defendant from fairly exercising his constitutional right to remain silent." In support of that position defendant contends that the polygraph, as used in this case, was coercive because defendant, who "believed" in the polygraph, was told that he had been found by the polygraph to be deceptive, despite the fact that polygraphs are not completely reliable. Defendant also complains that he was extremely fatigued at the time of the polygraph examination; that this may affect its accuracy, and that it was improper for the police to suggest that he might have killed because he "liked to kill" or for sexual reasons.

In *State v. Green,* decided this date, 271 Or 153, 531 P2d 245 (1975), we held (at 167) that a confession is not rendered inadmissible because given following a polygraph examination, provided that it is shown to have been given freely and voluntarily. We also said in *Green,* however (at 169), that the manner in which a polygraph examination is conducted may be such as to constitute physical or psychological coercion and that in such a case the resulting confession may be found to have been involuntary.

This case does not involve the offer of polygraph evidence at the trial before a jury of a criminal case, as in *Green.* Instead, this case involves the sufficiency of the evidence offered in a preliminary hearing before the trial court to establish that a confession was given voluntarily, so as to be admissible in evidence at such a trial.

Defendant testified at the hearing that he was told that "according to the examination" he had been "very deceptive" and had been "lying." This was ap-

parently true. We recognize, as stated in *Green,* that the polygraph has not yet attained general scientific acceptance as a reliable and accurate means of ascertaining truth or deception. For that reason, the results of polygraph examinations are held by most courts to be inadmissible as substantive evidence on the issue of the guilt or innocence of a defendant in a criminal case.

■ Nevertheless, we believe that the polygraph is a proper tool for use by the police in interrogating persons suspected of a crime, provided that such persons agree to voluntarily submit to such examinations and that such examinations are properly conducted. To hold otherwise and to hold that upon the completion of such a polygraph examination the police may not inform the person who has taken the examination that it appears from the polygraph that he has been deceptive would, as a practical matter, foreclose the effective use of polygraph examinations by the police in the investigation of crime.

■ The further fact that defendant may have been fatigued at the time of the polygraph examination may have had some effect upon the accuracy of the results of that examination. Upon the question whether defendant's subsequent confession was voluntary, however, we believe that such a fact was not sufficient, either alone or when considered together with the other facts in this case, to render defendant's confession involuntary as a matter of law.

■ As for defendant's testimony that it was suggested to him by the police that he may have committed the murder either because he "liked to kill" or for some sexual reason, that testimony was denied by the police officer.

The trial judge, after hearing the testimony offered by both parties at the hearing on defendant's motion to suppress the confession, some of which was conflicting, found that defendant's confession was given voluntarily. After examining the record we find that there was substantial evidence to support that finding.

Affirmed.