**STATE**

v.

**Ralph GRIFFITH.**

No. 89–85–C.A.

Supreme Court of Rhode Island.

June 26, 1992.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., Stephen G. Dambruch, Sp. Asst. Atty. Gen., for plaintiff.

John A. MacFayden, III, Providence, for defendant.

## OPINION

MURRAY, Justice.

This matter is before the court on interlocutory appeal from a Superior Court judgment granting the defendant's motion to suppress. The state appeals the judgment granting defendant's motion to suppress and the judgment denying the state's motion to use the statement to impeach the defendant should he take the stand. The defendant appeals the court's rulings that the defendant's admission was voluntary and that the defendant had waived his *Miranda* rights.

In January 1988 the Warwick police received a complaint that the defendant, Ralph Griffith, had sexually assaulted his six-year-old niece, Nancy.[1] The police initiated an investigation and took Nancy's statement in which Nancy alleged that defendant, a resident of Nashua, New Hampshire, sexually molested her while visiting her family in Warwick on December 27, 1987. On January 10, 1988, the police learned that defendant would be visiting his brother Whitney in Warwick. The Warwick police dispatched two plainclothes officers, Detective Anderson and Detective

McKnight, in an unmarked car to interview defendant. They arrived at the Griffith home in the early afternoon and received Whitney's permission to remain in the house and ask defendant questions when he arrived.

The timing between the detectives' arrival and defendant's arrival was not established at the hearing, but shortly after arriving at the Griffiths' home, the detectives met defendant and identified themselves as police officers. The detectives informed defendant that they were conducting an investigation and requested that defendant accompany them to the police station to be interviewed. The detectives would not answer defendant's questions concerning what they were investigating, but defendant agreed to the interview and followed the detectives to the police station in his own car.

At the station defendant followed the detectives to a second-floor interview room where Anderson first told defendant that he was a suspect in a case of first-degree sexual assault. Anderson explained the term "first-degree sexual assault" and read defendant his rights from a prepared form (rights form). The defendant paid attention while Anderson read the form and indicated several times that he understood what Anderson was saying. Anderson subsequently gave defendant the form and observed defendant read it. The defendant then checked the box indicating that he understood his rights and signed the form. Anderson also testified that during this time defendant did not appear to be under the influence of alcohol or drugs and that he never promised defendant anything or coerced defendant in any way to sign the form.

After defendant signed the form, Anderson explained Nancy's allegation that defendant had sexually molested her. The defendant immediately denied the allegation but agreed to answer additional questions. The interview continued for approximately forty-five minutes during which defendant asked Anderson on two or three

1. Nancy is a fictitious name.

occasions whether he had a right to a lawyer and whether he was free to leave. Anderson responded affirmatively each time.

As the interview progressed, defendant gradually retracted his denial. At first defendant said he didn't think he did it but later said "Well, if I did do it, I don't remember." At some point during the interview the detectives' supervisor, Sergeant Pierce, entered the room and told defendant "this could happen to anyone. I have a brother who had a problem like this and it's very difficult to talk about." Pierce also stated, "I'm the person who will decide whether or not you go home or whether or not you will get bail." After Pierce left the room defendant again asked whether he was free to leave and whether he had a right to an attorney. Anderson answered affirmatively but continued to press defendant to confess. Anderson told defendant that "if you don't admit it, we are going to bring this to the grand jury" and that, if the case went before the grand jury, Nancy would testify against defendant. Anderson also told defendant that Whitney was displeased with defendant and had reported defendant to police.

The defendant eventually confessed, first stating, "If you want me to admit to doing it, I will do it if that's what you want." Anderson immediately told defendant not to admit to anything he did not do and to explain only what really happened. The defendant then orally confessed to sexually molesting his niece. Anderson told defendant that he required the oral confession to be made in writing and gave defendant a form entitled statement of the defendant (statement form). The defendant read the statement form and wrote, "I admit to the charge of first degree sexual assault against the person of my niece, [Nancy] on December 27, 1987." Anderson observed defendant sign the form and then told defendant that defendant would be charged and suggested that defendant call an attorney. At this point defendant first indicated that he no longer wanted to speak to the police and that he wanted an attorney. The detectives did not question defendant further.

After the presentation of evidence at the suppression hearing, the trial justice granted defendant's motion to suppress both oral and written admissions. In granting the motion the trial justice first determined that the police had afforded defendant his constitutional rights and that defendant knowingly and intelligently waived these rights. The trial justice next ruled that the confession was voluntary, but that it was obtained as a result of an unlawful arrest and therefore must be suppressed as the fruit of an unlawful search. The state subsequently filed a motion *in limine* requesting to use the admission for impeachment purposes should defendant take the stand. The trial justice denied the motion ruling that the state would be barred from introducing defendant's admission for any purpose because the unfair prejudice to defendant in admitting the statement outweighed the statement's probative value. The state filed an interlocutory appeal from the trial justice's order asserting *inter alia* that the confession was not obtained as the result of an unlawful arrest. The defendant appealed the rulings that the confession was voluntary and that defendant's waiver of *Miranda* rights was voluntary.

The state first asserts that defendant was not under arrest at the time he confessed. The state argues that a reasonable, innocent person in the same situation as defendant would not have believed he was under arrest and that the trial justice erred in suppressing the otherwise legal confession as the fruit of an unlawful arrest. The defendant contends that he reasonably believed he was under arrest.

The exclusionary rule bars the introduction at trial of evidence obtained either during or as a direct or indirect result of a search or seizure in violation of an individual's Fourth Amendment rights. *State v. Jennings*, 461 A.2d 361, 368 (R.I. 1983). A person is seized or under arrest "within the meaning of the Fourth Amendment if, in view of all the circumstances surrounding the episode, a reasonable person would have to believe he was not free to leave." *State v. Mead*, 544 A.2d 1146, 1149 (R.I.1988). The factors a court consid-

ers in making this determination are: (1) the extent to which the person's freedom is curtailed; (2) the degree of force used by the police; (3) the belief of a reasonable, innocent person in the same circumstances; and (4) whether the person had the option of not going with the police. *State v. Bailey*, 417 A.2d 915, 917–18 (R.I.1980). Applying this analysis, we find that defendant was not under arrest at the time he made the oral and written confessions.

From the time the detectives met defendant until the time defendant confessed, the defendant's freedom of movement was never more than minimally curtailed. The two plainclothes detectives arrived at the Griffiths' residence at midday and received his permission to enter the home. Shortly thereafter they met defendant and requested that defendant accompany them to the police station. The defendant asked why, but the detectives did not answer and simply repeated their request that defendant come to the police station to be interviewed regarding a pending investigation. The defendant consented and voluntarily followed the police to the station in his own car.

The defendant attempts to introduce the detectives' subjective intent as a factor indicating that defendant was in custody from the time he agreed to accompany the detectives to the station. At the suppression hearing Anderson testified that if defendant had refused to accompany him to the police station, he would have left the Griffith home without defendant and sought a warrant for defendant's arrest. Anderson further testified that defendant voluntarily drove to the police station in his own car, but that once defendant started following the police to the station, the detectives would not have let defendant stop and go home because there was sufficient information contained in Nancy's affidavit to support an arrest warrant.

■ The subjective intent of the police to detain a suspect is irrelevant unless the intent is communicated to the defendant. *State v. Ferola*, 518 A.2d 1339, 1344 (R.I. 1986). Nothing in the record indicates that the police communicated their intent to detain defendant once defendant agreed to accompany them. The record shows that the police were courteous and used no force to coerce defendant. No weapons or raised voices were employed, no accusations were made, and there is no testimony indicating that defendant's decision to go to the police station was influenced by the detectives' actions. Because the record shows that the detectives' subjective intent to take defendant to the police station was not communicated to defendant, the defendant was not under arrest before he arrived at the police station.

We similarly find that defendant was not under arrest during the time between defendant's arrival at the Warwick police station and his oral confession. The instant case is factually similar to *State v. Kennedy*, 569 A.2d 4 (R.I.1990), in which the defendant voluntarily accompanied the police to the station for questioning. As in *Kennedy*, the police in the instant case informed defendant of the allegations made against him before asking defendant any questions. Anderson scrupulously informed defendant of his rights, and defendant was not in custody "merely because the questioning occurred at the police station and defendant was a suspect in the crime." *Id.* at 7. At no time during the interview did the detectives initiate formal procedures which would have indicated to defendant that he was under arrest, and on several occasions defendant asked the detectives whether he still had the right to an attorney and whether he was still free to leave. Each time the police responded affirmatively indicating to defendant that he was not under arrest. Based upon these facts defendant did not have reason to believe his liberty was curtailed or that he was not free to leave the police station. The record further reflects that the police executed no force during the interview, and under these circumstances a reasonable, innocent man would not have believed that he was under arrest.

Accordingly we find that defendant was not under arrest when he made the oral and written confessions and that the trial justice erroneously suppressed defendant's statements as the fruits of an illegal arrest.

The state may use defendant's statements in its case in chief; thus we do not address the state's claim that it should be allowed to use the statements for impeachment purposes.

The defendant's appeal raises two issues with the trial justice's rulings. The defendant claims, first, that the trial justice erred in ruling that defendant's oral and written admissions were voluntary and second that the trial justice erred in ruling that defendant knowingly and voluntarily waived his right to remain silent under the doctrine of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We affirm those rulings pertaining to defendant's appeal.

■ The defendant attacks the trial justice's ruling that defendant's confession was voluntary by asserting that the police subjected defendant to subtle pressures and improper influences that overwhelmed defendant's free will. The defendant asserts that the record exposes a continuum of pressure carefully orchestrated by the police that coerced defendant into making an involuntary confession. Among the specific factors cited by defendant are that: (1) the police encountered defendant, an out-of-state resident, unexpectedly at a relative's house; (2) the police refused to tell defendant why he was being interviewed; (3) more than one officer was present and asked defendant questions during the interview; (4) defendant was read his rights only once; (5) specific statements made by Sergeant Pierce and Detective Anderson mentally coerced defendant into confessing; and (6) defendant was interviewed for forty-five minutes.

■ Both the Rhode Island and the Federal Constitutions bar the use in a criminal trial of a defendant's involuntary statements. *See, e.g., State v. Amado,* 424 A.2d 1057, 1061 (R.I.1981) (citing state and federal precedent). A determination of voluntariness must be made on the basis of all facts and circumstances, including the behavior of the defendant and the behavior of the interrogators, and the ultimate test "is whether the defendant's statements were 'the product of his free and rational choice'

* * * or the result of coercion that had overcome the defendant's will at the time he confessed." *Id.* at 1062 (quoting *Greenwald v. Wisconsin,* 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77, 80 (1968)). A confession obtained by direct or implied promises or improper influence is involuntary, and the state bears the burden of proving by clear and convincing evidence that the confession was voluntary. 424 A.2d at 1062.

A review of the record from the suppression hearing shows that defendant's confession was voluntary. The interview at the station lasted a total of forty-five minutes and the questioning was described by Anderson as polite. Anderson further testified that he never raised his voice, never threatened defendant, and never promised defendant anything in return for a confession. The specific statements identified by defendant as contributing to the police coercion did not violate defendant's constitutional rights. Anderson's statement that he did not want to hear any more denials by defendant and Pierce's statement that "this could happen to anybody. I have a brother who had a problem like this" were not constitutionally impermissible police tactics. Moreover, when reviewed within the context of the entire interview, these statements did not contribute to make defendant's confession coerced, and the record supports the trial justice's determination that defendant's confession was voluntary.

■ The defendant next asserts that he did not knowingly and voluntarily waive his *Miranda* rights. The defendant claims that he did not waive his *Miranda* rights until he signed the statement form at the end of the interview and that this waiver was involuntary. The state contends that defendant waived his rights by signing the rights form before the interview and by not exercising his rights during the interview.

■ The *Miranda* holding imposes a primary rule that no statement obtained during custodial interrogation is admissible unless the prosecution proves that the subject knowingly and intelligently waived his

rights before the statement was made. *Amado*, 424 A.2d at 1061. The determination of whether there has been a waiver depends in each case on "the particular facts and circumstances surrounding that case, including the background experience, and conduct of the accused." *Id.* (quoting *North Carolina v. Butler*, 441 U.S. 369, 374–75, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286, 293 (1979)). The issue is often closely linked to whether the confession was voluntary, and the state bears a similar burden of proving by clear and convincing evidence that a defendant waived his rights in a voluntary, knowing, and intelligent manner. *State v. Benton*, 413 A.2d 104, 109 (R.I.1980).[2]

We first note that the defendant was satisfactorily informed of his *Miranda* rights before the interview began. Anderson testified that once at the police station, he read the defendant his rights and gave the defendant a form on which the rights were printed. The defendant read the form and marked the box acknowledging that he understood his rights. Anderson observed the defendant sign the form and testified that the defendant did not appear to be under the influence of alcohol or drugs when he signed the form. He further testified that he never promised the defendant anything or coerced the defendant to sign the form and that he explained the first-degree sexual-assault allegation before he asked the defendant any questions. The defendant thereafter agreed to answer questions concerning the charge, and this consent constituted a voluntary, knowing, and intelligent waiver of his *Miranda* rights. Furthermore, we find that the defendant's requests during the interview as to whether he was free to leave and whether he had a right to an attorney signify that the defendant understood his rights. Each time the defendant posed these questions, the police responded affirmatively, and the defendant's decisions

to continue answering questions and to eventually confess were made with full understanding of these rights and constitute a voluntary waiver.

Accordingly the defendant's appeal is denied and dismissed. The state's appeal is sustained, and the judgment of the Superior Court is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

**2.** In light of the holding and rationale of the United States Supreme Court in *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), wherein a mentally disturbed defendant was prompted by the "voice of God" to confess and said confession was held to be ad-

missible absent government coercion, we must caution that the term "intelligent" may not be as stringently applied as indicated in our earlier cases and those of the Supreme Court of the United States.