STATE

v.

Dino MARINI.

No. 92–614–C.A.

Supreme Court of Rhode Island.

March 8, 1994.

Jeffrey Pine, Atty, Gen., Annie Goldberg, Aaron Weisman, Asst. Attys. Gen., for plaintiff.

Earl Pasbach, East Providence, for defendant.

## OPINION

LEDERBERG, Justice.

Dino Marini (defendant) appealed to the Supreme Court a judgment of conviction of first-degree arson. The primary issue on appeal was whether the defendant's confession should have been admitted into evidence. We deny the defendant's appeal and affirm the judgment of the Superior Court. A summary of the facts follows.

### I

*Facts*

Between September 1989 and January 1990 defendant and his wife, Shirley Marini, twice applied to rent an apartment at the Captain Willett Arms apartment complex, 595 Willett Avenue, East Providence, Rhode Island, and twice were rejected. After considering the second application, Gina Illiano, the then-resident manager, notified the Marinis on approximately January 19, 1990, that their application had been rejected.

On January 21, 1990, at 5:04 p.m., the East Providence fire department was called to a fire at the apartment complex. A fire company headed by Assistant Fire Chief Gerald Bessette (Bessette) was dispatched to the scene. Upon arrival, Bessette observed smoke billowing from the roof area of building A of the complex. East Providence Fire Captain Joseph Castro (Castro), also on the scene, noticed a distinct "glowing" in one of building A's cellar windows. Bessette and Castro agreed that they faced a "cellar fire." Because Bessette believed that the fire was in a storage area behind the glowing window, that location became the focus of the firefighting efforts.

After Castro and another firefighter entered the cellar storage area, Castro observed "the bulk of the fire" to be to their left in the ceiling area above several storage bins. Castro left, then reentered the cellar from another position to confront the fire in the laundry room, which adjoined the storage room. The firefighting activity was delayed as firefighters searched for two occupants who were unaccounted for. Firefighter Stephen Afflerbach (Afflerbach) eventually rescued a woman from a third-floor window of building A.

The fire continued to spread and ultimately reached all three stories of building A. It was not brought under control until approximately 9 p.m. Damages sustained by owners Kelly & Picerne totaled $675,817, in addition to losses sustained by tenants of the building.

The day after the fire, Deputy State Fire Marshal Gerald Leddy (Leddy) arrived at the fire scene where he met Detective Robert W. McKenna (McKenna)[1] of the East Providence police department's fire investigation unit. Both inspected the damage in an attempt to ascertain the cause and origin of the fire. Leddy, who was qualified by the trial court as an expert on the cause and origin of fires, traced the "fire pattern" from the third story of building A to the storage room in the

cellar and, ultimately, to a storage bin. He concluded that the fire had been set intentionally. McKenna, also qualified to render an expert opinion, independently concluded that the fire had been intentionally set and had originated in the storage room.

McKenna had been at the scene on the night of the fire and interviewed defendant. During this interview, defendant stated that he had been in the storage area about five to ten minutes before the fire started and had smelled smoke. In a second interview with McKenna on January 24, 1990, defendant said that he had been in the laundry room adjoining the storage room at about 4:30 p.m. on the day of the fire and had noticed and smelled smoke.

On February 27, 1990, McKenna contacted defendant and invited him to the East Providence police station (station), and on March 1, 1990, defendant voluntarily appeared at the station where Leddy and McKenna questioned him. During the interview, which was audio- and videotaped, defendant confessed to McKenna and, later to Leddy, that he had "lit a piece of paper on fire * * * [and] left it in [a] storage bin." The defendant was arrested and charged with first-degree arson.

A jury found defendant guilty of first-degree arson. On January 24, 1992, the trial court entered judgment and sentenced defendant, who timely appealed.

## II

### *The Motion to Suppress the Confession*

On October 15, 1991, prior to his trial, defendant filed a motion to suppress the audio- and videotape of his March 1, 1990, statements to Leddy and McKenna. The defendant argued on appeal that the admission of his confession into evidence violated his Fourth and Fifth Amendment rights under the United States Constitution[2] and that

---

1.  Prior to the commencement of trial, Robert W. McKenna was promoted to the rank of sergeant.

2.  The defendant also claimed on appeal that admission of the videotape violated his rights under article 1, section 6 of the Rhode Island Constitution. Because the language contained in article 1, section 6 is identical to that contained in the

Fourth Amendment to the United States Constitution, we have refused to grant a defendant greater rights under article 1, section 6 than those afforded under its federal counterpart. *State v. Mattatall*, 603 A.2d 1098, 1113 (R.I. 1992). Therefore, our resolution of defendant's Fourth Amendment claims, discussed *infra*, nec-

the videotaping failed to comply with provisions of G.L.1956 (1981 Reenactment) chapter 5.1 of title 12 (Interception of Wire and Oral Communications), and therefore admission of the confession constituted reversible error.

In determining whether the confession was voluntary, the trial justice, outside the jury's presence, conducted an independent hearing on defendant's motion to suppress his confession, as required by *State v. Amado*, 424 A.2d 1057, 1061 (R.I.1981). The trial justice concluded that defendant's confession was voluntary and thus denied the motion to suppress the confession.

### A

On appeal, defendant maintained that because his confession was produced by misleading and coercive tactics during interrogation, admission of the self-incriminatory portions of the audio- and videotape violated his Fifth Amendment right against self-incrimination.

█ The admissibility of defendant's confession rests on the voluntariness of the confession and on compliance with the mandates of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A voluntary, knowing, and intelligent waiver of *Miranda* rights must be shown by the state before comments made by a defendant during *custodial interrogation* can be admitted into evidence. *State v. Pacheco*, 481 A.2d 1009, 1023 (R.I.1984). The invocation of *Miranda*, therefore, generally hinges entirely upon whether, at the time of his confession, the accused was "formally arrested or whether the person's freedom of movement is restricted to the degree associated with formal arrest. * * * Absent a formal arrest the determination of whether a person is subjected to restraints comparable to those associated with a formal arrest turns on how a reasonable person in the suspect's position would understand the situation." *State v. Caruolo*, 524 A.2d 575, 579 (R.I.1987).

█ Applying these principles to the March 1, 1990, interrogation of defendant, we

are of the opinion that the record contains ample evidence to support the trial court's conclusion that until defendant confessed to the arson, he never was "in custody" so as to trigger the prophylactic *Miranda* rule. Furthermore, there is no evidence of unlawful coercion during the interrogation. The taped record of the interrogation disclosed that defendant was reminded, on several occasions, that he was free to leave at any time; defendant indicated that he grasped the import of this freedom and acknowledged that he was at the station voluntarily. *See State v. Kennedy*, 569 A.2d 4, 7 (R.I.1990).

█ The noncustodial atmosphere was not converted into a custodial one simply because the questioning occurred at a police station, or because defendant may have been a suspect, *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279–80 (1983); *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977), or because an unarticulated investigative plan by Leddy and McKenna may have focused on defendant, *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 336 (1984); *Caruolo*, 524 A.2d at 580 n. 2. Until the moment of his confession, at which time he was placed under arrest, defendant was not "in custody," *see Kennedy*, 569 A.2d at 7; *cf. State v. Smith*, 317 N.C. 100, 104–05, 343 S.E.2d 518, 520 (1986) (where the defendant was transported to station and told he would be charged, the defendant was in custody), and admission of his confession into evidence did not, therefore, require compliance with the *Miranda* mandates. On the facts of this case, however, even if defendant's confession *had* occurred during custodial interrogation, its admission into evidence would not be precluded by *Miranda* because defendant had been informed of his rights at least three times: when he signed a polygraph-examination consent form that contained the requisite *Miranda* warnings; when he passed a written *Miranda*-rights test administered by Leddy; and when he was read his rights by McKenna, just before making his confession. Ultimately defendant showcased an understanding of his rights by invoking his right to

essarily disposes of defendant's claims under the Rhode Island Constitution.

counsel shortly after his confession when he was asked to sign a written statement acknowledging his confession.

■ The defendant also argued on appeal that his confession should have been suppressed because it was the product of an illegal arrest. Although it is true that "statements obtained by exploitation of an illegal arrest are fruits of the poisonous tree and are to be excluded at trial," *State v. Burns,* 431 A.2d 1199, 1205 (R.I.1981), our determination that defendant was not placed into custody until after incriminating himself establishes that until that time, no arrest, illegal or otherwise, had taken place. Thus defendant's argument fails.

■ "Both the Rhode Island and the Federal Constitutions bar the use in a criminal trial of a defendant's involuntary statements." *State v. Griffith,* 612 A.2d 21, 25 (R.I.1992). A defendant's statement is voluntary when it is " 'the product of his free and rational choice.' " *Amado,* 424 A.2d at 1062. But a confession extracted by coercion or improper inducement, including threats, violence, direct or indirect promises, or undue influence, is considered involuntary. *Hutto v. Ross,* 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194, 197 (1976); *Haynes v. Washington,* 373 U.S. 503, 513, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513, 521 (1963); *Griffith,* 612 A.2d at 25. When reviewing the voluntariness of a confession, all facts and circumstances surrounding the confession must be taken into account in determining whether, overall, the confession was freely and voluntarily made. *State v. McLaughlin,* 621 A.2d 170, 180 (R.I.), *cert. denied,* — U.S. —, 114 S.Ct. 168, 126 L.Ed.2d 128 (1993). We are not, though, required to find that the accused wanted to confess or that his confession was " 'completely spontaneous, like a confession to a priest, a lawyer, or a psychiatrist.' " *Miller v. Fenton,* 796 F.2d 598, 605 (3d Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986).

■ In support of his contention that his confession was involuntary, defendant primarily relied upon several specific occurrences during the interrogation. He argued that by informing him of the polygraph results, Leddy impermissibly coaxed him into confessing. This court has never expressly addressed the voluntariness of confessions made before, during, or after polygraph examinations. Other courts, however, have considered this issue and have concluded that polygraph examinations are not inherently coercive. *See, e.g., People v. Cummings,* 706 P.2d 766, 770 (Colo.1985). " 'Where the evidence shows that before he confessed the defendant took a lie detector test, if it was taken willingly, neither the fact it was given nor the fact that the defendant was told by the test giver it revealed in his opinion that defendant was not telling the truth, inherently demonstrates coercion.' " *People v. Brown,* 119 Cal.App.3d 116, 127, 173 Cal. Rptr. 877, 884 (1981). Moreover, if law enforcement officials are not permitted to inform polygraph examinees of their test results, an effective investigatory use of the polygraph in criminal matters would be severely curtailed. *Commonwealth v. Medeiros,* 395 Mass. 336, 349, 479 N.E.2d 1371, 1380 (1985) (quoting *State v. Clifton,* 271 Or. 177, 181, 531 P.2d 256, 258 (1975)); *Young v. State,* 670 P.2d 591, 594 (Okla.Crim.App. 1983). We conclude, therefore, that confessions prompted by polygraph results are not automatically rendered involuntary as a matter of law. *Medeiros,* 395 Mass. at 348, 479 N.E.2d at 1380. *See Clifton,* 271 Or. at 181, 531 P.2d at 258. Rather, the totality of circumstances must be examined by the trier of fact in order to establish whether a confession was coercively produced. *Arizona v. Fulminante,* 499 U.S. 279, 286–87, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302, 315–16 (1991); *McLaughlin,* 621 A.2d at 180. In this case, we are of the opinion that the confession was not coerced.

■ The defendant also contended that Leddy improperly urged him to admit that he had set the fire by telling him that a confession would render him generally "better off" and by informing him that by confessing, "he could get some help and could even get [away with] probation." And McKenna, defendant argues, impermissibly urged him that telling the truth would instill a good feeling, like "going to confession." Moreover, defendant contended, McKenna

misled him into confessing by falsely informing him that everyone who entered the storage room where the fire began had been recorded by a surveillance camera; the surveillance tape, when developed, would then reveal who had set the fire, and therefore, a confession would make things easier.

Although "[t]he line between proper and permissible police conduct and techniques and methods offensive to due process is, at best, a difficult one to draw," *Haynes*, 373 U.S. at 515, 83 S.Ct. at 1344, 10 L.Ed.2d at 521, we are of the opinion that none of defendant's additional contentions rendered his confession inadmissible. It is well-established that admonitions by the police to tell the truth do not render a subsequent confession involuntary. *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir.1978). Law enforcement agents are also permitted to tell an accused that his cooperation would be "helpful" to him, *United States v. Davidson*, 768 F.2d 1266, 1271 (11th Cir.1985), and that a confession would "make it better," *State v. James*, 459 So.2d 28, 30–31 (La.App.1984). *Accord State v. Arrington*, 14 Ohio App.3d 111, 115, 470 N.E.2d 211, 216 (1984); *State v. Drogsvold*, 104 Wis.2d 247, 275, 311 N.W.2d 243, 256 (1981).

■ It is permissible for an interrogator to promise an accused "help" in exchange for a confession. *Martin v. Wainwright*, 770 F.2d 918, 925 (11th Cir.1985), *cert. denied*, 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986). A confession is not rendered involuntary, as a matter of law, by law enforcement officials promising a defendant, in exchange for a confession, that they would reduce the charges, *United States v. Harris*, 914 F.2d 927, 933 (7th Cir.1990); or that the defendant would receive more lenient treatment, *United States v. Guarno*, 819 F.2d 28, 31 (2d Cir.1987); or that the defendant would be confined in an out-of-state prison. *Pacheco*, 481 A.2d at 1026. Finally, law enforcement officers may inform a suspect, truthfully or otherwise, of the evidence against him. *See Frazier v. Cupp*, 394 U.S. 731, 739, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684, 693 (1969); *United States v. Tutino*, 883 F.2d 1125, 1138 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *United*

*States v. Broccolo*, 797 F.Supp. 1185, 1194 (S.D.N.Y.1992). Viewed against this background, it is clear that although the tactics allegedly employed by Leddy and McKenna are factors to consider in determining voluntariness, *see Wainwright*, 770 F.2d at 925–26; *State v. Fuentes*, 433 A.2d 184, 189 (R.I. 1981), *per se* they were not impermissible.

■ Our review of the audio- and videotape of the interrogation affirms the trial court's finding that defendant was relaxed and, even though he was left unattended in the polygraph room repeatedly during the approximately two-and-one-half-hour period, defendant made no attempt to leave the room or even to rise from his chair. Maintenance of composure supports a finding of voluntariness, *see Vargas v. Brown*, 512 F.Supp. 271, 277 n. 7 (D.R.I.1981), as does the fact that defendant had completed the eleventh grade and thus had the capacity and knowledge to understand what he was doing, *see Battle v. Armontrout*, 814 F.Supp. 1412, 1428 (E.D.Mo.1993) (finding mere eighth-grade education supported finding of voluntariness). Finally, although defendant argued that McKenna impermissibly intimidated him by interrogating him "at close quarters and right up to [his] face * * * in a position blocking the exit," we concur with the trial justice's finding that overall, McKenna and Leddy treated defendant with courtesy and respected his rights throughout the questioning. Indeed, as soon as defendant invoked his right to counsel, all interrogation stopped.

In summary, when viewed in the context of the whole interview, the tactics used by Leddy and McKenna were aimed at inducing defendant to confess, but they did not cause him to make a statement against his will.

■ In reviewing a trial justice's decision on a motion to suppress, this court views the evidence in the light most favorable to the state and applies the "clearly erroneous" rule. *State v. Collins*, 543 A.2d 641, 650 (R.I.1988); *State v. LaRosa*, 112 R.I. 571, 576, 313 A.2d 375, 377 (1974). Findings of fact will not be disturbed unless the trial justice misconceived or overlooked material evidence or otherwise was "clearly wrong." *Ocean Road Partners v. State*, 612 A.2d 1107,

1111 (R.I.1992). The trial justice found that the videotaping provided an objective recording of words, demeanor, and timing, all of which contributed to his determination that the confession was voluntary, and consequently, he denied defendant's motion to suppress. We find no error in that decision.

**B**

We next address whether admitting the audio- and videotaped confession into evidence violated defendant's Fourth Amendment protections against unreasonable searches and seizures. We conclude that it did not.

Relying primarily upon *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576, 583 (1967) (FBI's action violated the "privacy upon which [the caller] justifiably relied while using [a public] telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment"), and reasoning that a person's right to privacy continues to surround him "wherever he goes," defendant argued that audio- and videotaping him at the police station violated his Fourth Amendment rights and his statutory rights set forth in chapter 5.1 of title 12, because the recording was conducted without his consent and without prior judicial approval. We disagree.

In *State v. Maloof*, 114 R.I. 380, 384, 386, 389–91, 333 A.2d 676, 678, 681–82 (1975), this court relied upon the principles enunciated by the Supreme Court in *Katz* and held that both the Fourth Amendment and the Declaration of Rights specified in the Rhode Island Constitution safeguard one's privacy from unwarranted and unauthorized intrusion by wiretapping or electronic eavesdropping. Such Fourth Amendment protection, however, accompanies only a *justifiable* expectation of privacy, for "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582. For example, we upheld the admission into evidence of a statement made by a defendant, in custody, during a telephone conversation overheard by a conveniently located police officer. *State v. Gelinas*, 417 A.2d 1381, 1387, 1388 n. 8 (R.I.1980).

In this case, defendant signed a polygraph-examination consent form which provided in pertinent part, "I consent to the use of electronic hearing and recording devices." *See State v. O'Dell*, 576 A.2d 425, 427 (R.I.1990) (consensual search is constitutionally valid). Moreover, he was informed of his *Miranda* rights, including his right to remain silent. Nevertheless, defendant spoke openly to detectives McKenna and Leddy during a two-and-one-half-hour interview even after having been informed that he had failed the polygraph exam. Under these circumstances, defendant did not have a justifiable expectation of privacy. *See Gelinas*, 417 A.2d at 1388 n. 8; *State v. McAdams*, 559 So.2d 601, 602 (Fla.Dist.Ct.App.1990). Hence, the Fourth Amendment was not a bar to admissibility of the audio- and videorecording even though it was produced without defendant's knowledge. *See United States v. James*, 496 F.Supp. 284, 288 (W.D. Okla. 1977) (holding that "[t]apes of an accused's conversation with law enforcement officers, voluntarily made * * * [e]ven if * * * made without the accused's knowledge * * * may be admissible").

**C**

We find no merit to defendant's contention that his confession should have been suppressed pursuant to chapter 5.1 of title 12, which sets forth the procedure that law enforcement officials must follow in order to lawfully intercept wire or oral communications. *State v. Ahmadjian*, 438 A.2d 1070, 1079 (R.I.1981). Section 12–5.1–12 permits aggrieved persons to "move to suppress the contents of any intercepted wire or oral communication or evidence derived therefrom."

As defined in § 12–5.1–1(a), as amended by P.L.1986, ch. 3, § 1, the term "wire communications" means "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection." Clearly, defendant's statements at the police station were not "wire communications" as defined in § 12–5.1–1(a). Furthermore, the term "oral communications,"

as defined in § 12–5.1–1(b), means "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." As discussed *supra*, defendant did not have a justifiable expectation that his statements to Leddy and McKenna would remain private. Therefore, he should not have formed any reasonable expectation that his statements would not have been intercepted. Accordingly, we conclude that the recording of the interview with defendant did not require compliance with the mandates of chapter 5.1 of title 12.

## III

### *The Motion for Judgment of Acquittal*

■ In contesting the denial of his motion for judgment of acquittal, defendant argued on appeal that because the state did not establish a corpus delicti beyond a reasonable doubt, his confession was inadmissible, and therefore, the trial court erred in denying his motion.[3] The defendant made the motion at the close of the state's case. After the motion was denied, counsel for defendant proceeded to make an opening statement, present his case, rest, then make a closing argument. The state then presented its closing remarks. The next morning, the trial justice charged the jury; the jury returned a verdict of guilty. At no time following the trial court's denial of the motion, however, did counsel for defendant renew his motion for judgment of acquittal. Because defendant presented evidence without subsequently renewing his motion for judgment of acquittal, the trial justice's denial of that motion was not preserved for appeal.

peal. *State v. Clark*, 576 A.2d 1202, 1206 (R.I.1990). Even if the motion had been renewed, we are of the opinion that the evidence before the jury had established the requisite corpus delicti and compelled denial of the motion.

## IV

### *The Motion for a New Trial*

The defendant's motion for a new trial was denied by the trial justice. On appeal, defendant argued that because "the jury verdict was against the fair preponderance of the evidence and failed to do substantial justice" and because "the trial justice could reach a different conclusion from that of the jury," the trial justice erred in denying his motion. We disagree with defendant.

■ In deciding a motion for a new trial, the trial justice must act as a thirteenth juror and exercise his or her independent judgment on the credibility of witnesses and the weight of the evidence. *State v. Warren*, 624 A.2d 841, 843 (R.I.1993). If, following this analysis, the trial justice reaches a conclusion that differs from that of the jury, "he or she must then determine whether the evidence is so evenly balanced that reasonable minds might fairly come to differing conclusions. * * * If he or she finds the evidence so evenly balanced, then he or she should defer to the findings of the jury." *Id.* If, however, the trial justice finds that "the verdict is against the fair preponderance of the evidence and fails to do substantial justice," a new trial may be granted. *State v. Dame*, 560 A.2d 330, 333 (R.I.1989). When, after reviewing the evidence, the trial justice agrees with the jury's verdict, the analysis is

---

**3.** The defendant's contention presupposes that the state must prove the corpus delicti beyond a *reasonable doubt prior to* introducing an extrajudicial confession. This position is erroneous. Although it is true that before it may obtain a conviction, the state must establish a corpus delicti beyond a reasonable doubt, the state is not required to prove a corpus delicti beyond a reasonable doubt as a prerequisite to introducing an extrajudicial confession. *State v. Halstead*, 414 A.2d 1138, 1143 (R.I.1980). Rather, the state may introduce a confession after it introduces some independent evidence of a corpus delicti which, if believed, "indicate[s] that the crime

charged had been committed by someone." *Id.* at 1143–44. After the introduction of such evidence, a confession may be admitted and considered as corroborating evidence to establish the requisite corpus delicti beyond a reasonable doubt. *Id.* at 1144.

In this case, a review of the record disclosed ample independent evidence which, if believed, indicated that arson had been committed by someone. Introduction of defendant's confession was therefore permissible and could serve as corroborating evidence to establish the corpus delicti beyond a reasonable doubt.

at an end and the verdict should be affirmed. *Warren,* 624 A.2d at 843.

In the case before us, the trial justice assessed the credibility of witnesses, weighed the evidence, and concluded that, based upon the evidence, he saw no possibility of the jury reaching a verdict other than guilty. Accordingly he denied the motion for a new trial. Because the trial justice complied with the requisite procedure for considering a motion for a new trial, "his decision will be given great weight on appeal and will be disturbed only if he 'overlooked or misconceived material evidence relating to a critical issue or was otherwise clearly wrong.'" *Id.* (quoting *Caruolo,* 524 A.2d at 585).

After reviewing the evidence, we are of the opinion that the trial justice considered and understood all relevant and material evidence and properly denied defendant's motion.

## V

### *The Motion to Exclude Evidence*

The defendant contended that the trial justice abused his discretion when he admitted into evidence certain testimonial and pictorial evidence offered by the state; first, firefighter Afflerbach's testimony that upon observing an apparently frightened woman leaning out of a third-floor window on building A's east side, he guided the woman down a "window ladder" to safety and thereupon noticed that she displayed signs of smoke inhalation; and second, a photograph that showed the ladder extended to a third-floor window. We disagree with defendant.

According to defendant, the evidence should have been excluded under Rule 403 of the Rhode Island Rules of Evidence because it was cumulative and unduly prejudicial. Relevant evidence is defined as "evidence that tends to prove or disprove a point provable in the case." *Abbey Medical/Abbey Rents, Inc. v. Mignacca,* 471 A.2d 189, 194 (R.I.1984). Under Rule 402 of the Rhode Island Rules of Evidence, "[a]ll relevant evidence is admissible." Rule 403, however, qualifies 402, by providing that evidence—though relevant—may nevertheless be excluded "if its probative value is substantially

outweighed by the danger of unfair prejudice."

Determinations of the relevancy of evidence offered at trial are within the sound discretion of the trial justice. *Mignacca,* 471 A.2d at 194. In addition, "[t]he ultimate determination [under Rule 403] of the effect of * * * evidence is within the trial justice's discretion." *State v. Grundy,* 582 A.2d 1166, 1172 (R.I.1990). Rulings on the admissibility of evidence on relevance grounds will not be considered reversible error unless we find that the trial justice abused his discretion. *Mignacca,* 471 A.2d at 194.

To prove a charge of arson in the first degree, the state must establish beyond a reasonable doubt that a fire or explosion created "a substantial risk of serious physical harm to any person or damage to any building * * * which is occupied or in use for any purpose or which has been occupied or in use for any purpose during the six (6) months preceding the offense or to any other residential structure." General Laws 1956 (1981 Reenactment) § 11–4–2, as amended by P.L. 1983, ch. 185, § 1.

Clearly the contested evidence was relevant in establishing that the fire created a substantial risk of physical harm and damaged an occupied building. After review of the entire record, we are of the opinion that the contested evidence provides direct proof that the fire created a substantial risk of serious physical harm. Therefore, although the evidence may have aroused the jury's sympathy, it was highly probative. Consequently, we find no error in the trial justice's determination that the evidence was relevant and that its probative value outweighed its prejudicial effect. Furthermore, the trial justice mitigated any prejudicial effect by admonishing the jury that "[b]ias, prejudice, [and] sympathy * * * play no part in your deliberations. It would be inappropriate for you to find the defendant guilty simply * * * because you feel sorry for the woman that was carried down the ladder."

The defendant argues alternatively that because the state failed to establish a "demonstrable need" to introduce the photograph, its admission into evidence was pre-

cluded by *State v. Long,* 488 A.2d 427 (R.I. 1985). The defendant's reliance on *Long* is misplaced. *Long,* which sets forth guidelines for introducing criminal "mug shots" into evidence, requires that the state have a "demonstrable need" for their introduction. *Id.* at 431. *Long* and its guidelines, however, simply do not apply to the introduction of photographs other than "mug shots."

## VI

### *The Jury Instructions*

The defendant on appeal challenged the sufficiency of the trial justice's instructions concerning the constitutional prerequisites to the jury's consideration of defendant's confession. We conclude that the trial court's instructions sufficiently covered the applicable law.

■ When a defendant's confession has been admitted into evidence, the trial justice must instruct the jury that before it may substantively consider the incriminating admission, the jury must determine that the state has shown, by clear and convincing evidence, that "the inculpatory statement was not obtained in violation of the defendant's constitutional guarantees." *State v. Lima,* 546 A.2d 770, 773, 777 n. 3 (R.I.1988). *Accord State v. Bello,* 417 A.2d 902, 904 (R.I.1980).

■ The charge given by a trial justice need only "adequately cover[ ] the law." *Grundy,* 582 A.2d at 1170. A trial justice's jury instructions will be upheld if they neither reduce nor shift the state's burden of proof. *State v. Gordon,* 508 A.2d 1339, 1349 (R.I.1986). On review, we examine the instructions in their entirety to ascertain the manner in which a jury of ordinarily intelligent lay people would have understood them. *State v. Gomes,* 604 A.2d 1249, 1256 (R.I. 1992). "We will not examine single sentences. Rather, the challenged portions must be examined in the context in which they were rendered." *Gordon,* 508 A.2d at 1349.

■ In this case, the trial justice instructed the jury that a "defendant who is in custody * * * must be given his *Miranda* warnings before any statement made by that defendant may be introduced into evidence. If one is not in custody, that person need not be given by law enforcement his so-called *Miranda* rights." The trial justice then proceeded to explain the composition of, and history behind, a defendant's *Miranda* rights, and next instructed the jury on when a defendant is "in custody" for *Miranda* purposes. The trial justice stated to the jury, "If you conclude that the statement given in this case was against the will of the defendant, that he did not give it *after weighing whatever was said to him* and deciding [that] he would make the choice, then you disregard the confession." (Emphasis added.)

Clearly, this portion of the charge was intended to cover the *Miranda* requirement that the state establish that defendant voluntarily and intelligently waived his rights. *See Amado,* 424 A.2d at 1061–62. Although the trial justice did not expressly incorporate the term "waiver" in the charge, it is well-established that a trial justice may " 'charge the jury in his own words as long as he states the applicable law.' " *State v. Andrade,* 544 A.2d 1140, 1143 (R.I.1988) (quoting *State v. Hadrick,* 523 A.2d 441, 444 (R.I.1987)). Furthermore, when viewed against the immediately preceding instructions, we believe that a jury of ordinary intelligent lay persons would understand that the charge required them to determine that defendant made the requisite voluntary and intelligent waiver of his *Miranda* rights.

The trial justice properly instructed the jury on the necessity for a voluntary confession by directing the jury to determine whether "the will of the defendant [was] so overcome by the totality of the circumstances that the statement was coerced by law enforcement * * * [and was] not voluntary." The defendant argued that, in addition, the jury should have been told to disregard the confession "if it was obtained by direct or implied promises or improper influence." It is well settled, however, that the "voluntariness" instruction chosen by the trial justice in this case adequately covers the law. *See Pacheco,* 481 A.2d at 1024–26.

■ Finally, the trial justice instructed the jury that the state was required to prove "each and all of these elements * * * beyond a reasonable doubt." Whereas the actual burden of proof governing a jury's consideration of criminal confessions is only "clear and convincing evidence," the trial justice's instruction had the effect of overprotecting defendant and does not constitute reversible error. *Bello*, 417 A.2d at 905 n. 3. Accordingly, we conclude that the jury in this case was properly instructed.

## VII

### *The Motion to Reduce Sentence*

■ The defendant was sentenced to thirty years, twenty years to serve at the Adult Correctional Institutions; the state had recommended a sentence of thirty years, fifteen years to serve. The defendant's motion to reduce sentence was denied. On appeal, defendant argued that "a sentence of substantially lesser time would have been more proportioned to the offense."

"Our function in the review of sentences is an extremely limited one." *State v. Giorgi*, 121 R.I. 280, 282, 397 A.2d 898, 899 (1979). Absent an abuse of discretion by the trial justice, this court will not alter a sentence on appeal. *Id.* Consequently we exercise our power to reduce sentences "only when the record points convincingly to the conclusion that the sentencing justice has without justification imposed a sentence which is grossly disparate from sentences generally imposed for similar offenses." *State v. Fortes*, 114 R.I. 161, 173, 330 A.2d 404, 411 (1975).

■ In imposing sentences, trial justices are bound only by statutory limits. *State v. Gordon*, 539 A.2d 528, 530 (R.I.1988). Past arson sentences provide a norm or benchmark for sentencing, not a mandate. *Id.* The sentencing justice may impose a more severe or a less severe punishment than that recommended by the state. *Id.* "In formulating a fair sentence, the trial justice bears the affirmative duty to treat each defendant separately, focusing on the individual's unique background and character. * * * He should consider the gravity of the crime, the possibilities for defendant's rehabilitation, deter-

rence to others, and the appropriateness of the punishment for the crime." *Id.*

Section 11–4–2 provides that persons convicted of first-degree arson "shall * * * be sentenced to imprisonment for not less than five (5) years and may be imprisoned for life * * *; provided, further, that whenever a death occurs to a person * * * imprisonment shall be for not less than twenty (20) years." Clearly, the sentence imposed in this case is well within the statutory limits for the offense. We note that in *Gordon*, we upheld a first-degree arson sentence of fifty years. 539 A.2d at 529–31.

■ Our review of the record discloses that the trial justice rendered the requisite separate evaluation by considering defendant's presentence report and such personal factors as the rejection he suffered as a youth and the misfortune that incarceration would bring to defendant's family.

The trial justice noted, however, that militating against these considerations were the interests of defendant's victims, who "sustained tremendous inconvenience * * * [and] loss of personal property." The trial justice justified the sentence by reviewing the devastating nature of the fire at issue, by pointing out the need to deter others from committing arson, and by noting that the Legislature had established even life imprisonment as an appropriate punishment for arson.

We are of the opinion, therefore, that the defendant has not sustained his burden of proving that the trial justice abused his discretion by refusing to reduce his sentence.

In conclusion, for the foregoing reasons, the defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.