STATE

v.

James H. WILLIAMS, Jr.

No. 99–72–C.A.

Supreme Court of Rhode Island.

June 15, 2000.

Virginia M. McGinn, Aaron L. Weisman, Providence, for Plaintiff.

Edward J. Romano, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on May 8, 2000, pursuant to an order directing the parties to appear and show cause why the issues raised on appeal should not be summarily decided. The defendant, James H. Williams, Jr., has appealed from a judgment of conviction on one count of manufacturing or delivering a controlled substance, in violation of G.L. 1956 § 21–28–4.01(A)(2)(a). After hearing the arguments of counsel for the parties and examining their memoranda, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time.

On October 10, 1997, Anthony DiNitto (DiNitto) served as an informant in a drug transaction at the Coliseum Sports Bar (bar) in Johnston, Rhode Island. Before DiNitto purchased the controlled substance, Detectives Albert Faella (Faella) and Timothy Heston (Heston) searched his person and his car for contraband and placed a listening device on him. Heston

entered the bar first, followed by DiNitto. A few moments later, DiNitto emerged from the bar and told Faella that DiNitto's cousin was coming to the bar, and he might recognize Heston. Heston thereafter left the bar.

Faella, who was monitoring the transaction that was broadcast over the wire, overheard what sounded like individuals "negotiating the price over the pills." DiNitto then exited the bar and was heard over the wire to say, "I got it." DiNitto thereafter produced a ripped napkin containing thirty-five pills of generic valium that he claimed he purchased from defendant. Faella and Heston again searched DiNitto and his automobile and then paid him $30.

The defendant testified at the jury trial that followed. He contradicted this story, stating that on the night in question, DiNitto entered the bar, visited the rest room, asked if defendant had seen DiNitto's cousin and then left. Nevertheless, the jury returned a verdict against defendant. Following the verdict, defendant filed a motion for a new trial that was heard on October 5, 1998, and denied. Judgment entered on November 16, 1998, and defendant was sentenced to fifteen years, with three to serve and twelve years suspended with probation. The defendant filed a timely notice of appeal.

On appeal, defendant first argued that the state violated Rule 16 of the Superior Court Rules of Criminal Procedure. Under the relevant portion of Rule 16, the state is required to furnish a copy of all recorded statements to defendant. It is defendant's contention that the statements made by DiNitto on the over-the-air wire fell within this provision. The defendant argued that the state's failure to provide him with a copy before trial therefore violated the rule.

This Court has stated that when there is an allegation of nondisclosure, a trial justice, and this Court on review, should examine four factors: "(1) the reason for nondisclosure, (2) the extent of prejudice

to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." *State v. Boucher*, 542 A.2d 236, 241 (R.I.1988) (quoting *State v. Ricci*, 472 A.2d 291, 299 (R.I.1984)).

■. In this case, the listening device at issue merely broadcast the transaction, it did not record the conversation. Additionally, the conversation, as perceived by Faella, was never transcribed. Thus, the trial justice was correct in concluding that no Rule 16 violation occurred. *See, e.g., State v. Rudacevsky*, 446 A.2d 738, 740 (R.I. 1982) (no discovery violation where defendant requested written or recorded statements and there were none).

■ In his discovery motion, defendant asked for "all relevant recorded testimony" and "written or recorded verbatim statements" of those persons the state intended to call as witnesses at the trial. The state responded with a list of witnesses and a summary of their testimony. The defendant argued that the written summaries were insufficient and violated the state's duty of disclosure because the report did not mention that Faella, through electronic surveillance, overheard a conversation which sounded like a drug transaction. We disagree.

■ The fact that the detective's witness statement was not as complete as defendant may have wished does not create a discovery violation or prejudice defendant. There is no requirement pursuant to Rule 16(a)(7) that the state provide a detailed narration of the testimony of its witnesses. *State v. Woodson*, 551 A.2d 1187, 1192 (R.I.1988). In this case, the state provided the witness statement of the detective, which was all it was required to do. *Id.*

■ Furthermore, while it is true that defendant was not aware until trial that DiNitto had been wearing a microphone, the information gleaned from the wire was not exculpatory, and therefore did not con-

stitute a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See State v. DiPrete,* 710 A.2d 1266, 1270 (R.I.1998) (citing *Brady* for the principle that due process requires the state to provide a defendant with any exculpatory evidence relevant to the pending trial).

■ The defendant next argued that the type of monitoring employed in this case was in violation of G.L.1956 chapter 5.1 of Title 12, the Interception of Wire and Oral Communications statute. We have held, however, that participant monitoring, like that which occurred here, is not governed by this statute. *State v. Ahmadjian,* 438 A.2d 1070, 1080 (R.I.1981).

■ The defendant's final argument was that the trial justice erred in denying his motion for a new trial. He asserted that DiNitto's testimony was not believable and "rife with inconsistencies." Specifically, he pointed to conflicts in DiNitto's testimony as to the packaging of the pills. He also alleged that there were inconsistencies regarding the amount of time DiNitto spent in the bar and whether DiNitto had negotiated a price for the drugs earlier in the day.

■ It is well settled that when reviewing a trial justice's ruling on a motion for a new trial this Court will defer to the trial justice's findings on both credibility and fact, and will not disturb those findings unless the trial justice overlooked or misconceived relevant and material evidence.

*State v. Marini,* 638 A.2d 507, 515–16 (R.I. 1994). In denying the defendant's motion, the trial justice clearly reviewed the testimony and demeanor of the defendant and of DiNitto and found DiNitto's version of the events worthy of belief. He stated:

> "[Defendant] took the stand and said categorically he never gave any drugs, didn't sell any drugs. I saw both witnesses. I saw the demeanor on the stand. While I concede that * * * DiNitto was not a rocket scientist he had the ring of truth when he mentioned that he got the pills from [defendant]. I find [defendant's] testimony was not worthy of belief."

The trial justice fulfilled his role as a thirteenth juror in independently assessing the credibility of the witnesses and weighing the evidence in this matter. Because the defendant has failed to show that the trial justice clearly was wrong in evaluating DiNitto's testimony, we discern no error in the trial justice's denial of the motion for a new trial.

We therefore deny and dismiss the defendant's appeal and affirm the judgment of the Superior Court, to which the papers in this case are remanded.