STATE OF MAINE

RECEIVED AND FILED
KENNEBEC SUPERIOR COURT

2009 FEB 17 A 10: 28

CLERK OF COURTS

KENNEBEC, ss.

STATE OF MAINE

v.

GREGORY KIMBALL,

Defendant

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-08-211
DHM

ORDER ON MOTION
TO SUPPRESS

Before the court is defendant's motion to suppress statements on the grounds that such statements were involuntarily.

Upon complaint that unlawful sexual conduct had taken place between the defendant and two stepdaughters, the Maine State Police conducted an investigation. As part of that investigation, the defendant was offered an opportunity to be the subject of a polygraph examination. The examination, as well as the conduct of the interrogation before and after the examination, were recorded, which recording this court has viewed. All evidence submitted assures the court that the defendant undertook the polygraph examination voluntarily and with full understanding of its implications.

The first attempt at a polygraph examination was undertaken on December 17, 2007, but the examiner declined to proceed with the examination because of the emotional state of the defendant. However, a signed *Miranda* warning and polygraph waiver was executed on that date, which document is in evidence.

On December 27, 2007, the defendant again appeared for a polygraph examination and again signed the *Miranda* statement as well as the polygraph waiver. There is no evidence that the defendant was in a high emotional state at the time of the execution of the waiver nor that he was unable to read or understand its terms. The signed document appears as a State's exhibit. In addition, the defendant signed a document indicating that the examination was concluded at 2:48 p.m. and confirmed that no promises or threats were made either in connection with the examination or the signing of the consent.

The court examined the content of three DVD videos, the recordings of the proceeding. The videos are very lengthy but also contain periods in which the defendant was not present, having taken breaks, and no evidence was submitted suggesting that promises, threats or involuntary statements were made to any of the investigating officers during the break periods. Throughout the early stages of the interrogation, it appeared clear that the defendant understood his rights and that he could terminate the examination at any time and leave the premises. It was clear that he was not subject to arrest and, therefore, the court finds no evidence that the interrogation was custodial nor any suggestion by the defendant that it was the case. The defendant freely discussed relationships with the alleged victims and the very unhappy relationship with his wife. It was clear that whatever circumstances caused the defendant to be investigated, the defendant believes it is an effort on the part of his former wife to exact some form of retribution for one reason or another. The polygraph examiner discussed the use of the polygraph, its functioning, and he related the precise

questions that were to be asked during the examination. Before the examination, the examiner clearly gave the defendant the impression that it would be very difficult to fool the machine. It did not appear that the examiner asserted the polygraph machine to be perfect nor was there any discussion with respect to its admissibility but that the results would guide the interrogator in the investigation.

After the examination, it does not appear that the examiner accused the defendant of failing to tell the truth but he certainly hinted to the defendant that there was more to discuss. The court does not find evidence in the record as to what the results of the polygraph examination were. At any rate, it appears clear that the nature of the interrogation became more focused after the completion of the polygraph examination.

As the officer focused in on the relationship between the defendant, his wife and the stepchildren, it became clear by the response of the defendant that something had happened which he was not happy about and which was completely contrary to his personal standards of behavior. As a result, the defendant made succeeding inculpatory statement suggesting that at the behest of his depraved spouse, some conduct had taken place resulting in a confession by the defendant which he reduced to writing. His written statement concluded that he had done something wrong and he was ready to accept the consequences even though he asserted he was "pressured into them." The investigator then asked the defendant to put in his statement in his words what it is he did that was wrong, more specifically. At that point, the defendant added

to his writing that, "The evil bitch that I am married 2 . . . " made him engage in the unlawful conduct with the children.

The polygraph examiner then explained to the defendant that he would like him to confirm his statement by answering the questions of another detective. The second detective then entered the room and the confession was made. This is the only time that the defendant was in the examination room with any other person except the polygraph examiner. While the defendant was clearly emotionally upset at the time the final confession was made, it appears to this observer that the cause of his emotional state was the conduct under the investigation and of which the defendant was really upset as a matter of personal principle. During the discussion, the defendant offered details to the examiners which are not contained in his written statement.

The court finds no evidence of improper inducement by promises of leniency regarding either the charge or the sentence. *State v. Tardiff*, 374 A.2d 598 (Me. 1977).

A confession is admissible in evidence only if voluntary, and the State bears the burden of establishing voluntariness beyond a reasonable doubt. In order to find a statement voluntary, it must first be established that it was as a result of defendant's exercise of his own free will and rational intellect. The court must consider the totality of the circumstances in determining whether a confession is voluntary. *State v. Sawyer*, 2001 ME 88, 772 A.2d 1173 at 1175.

In applying a totality of the circumstances analysis to determine voluntariness, the court must consider both external and internal factors, such as: the details of the interrogation; duration of the interrogation; location of the interrogation; whether the

interrogation was custodial; the recitation of *Miranda* warnings; the number of officers involved; the persistence of the officers; police trickery; threats, promises or inducements made to the defendant; and the defendant's age, physical and mental health, emotional stability, and conduct. 772 A.2d at 1176.

The interrogation took place in the polygraph examination room of the Maine State Police over a period of five or six hours, including break time. The circumstances were clearly not custodial. The defendant was in the room alone with a single polygraph examination/interrogator, was free to leave, at times did leave to take a break, and was told that he was not going to be arrested. The details of the polygraph examination were explained to him and he expressed and executed a document displaying his willingness to undertake the examination. There was a summary explanation of the evidence available in the case and a discussion of the defendant's relationship with his wife. The *Miranda* warning was given, explained to the defendant who executed a document, in evidence, confirming the same. During the process, the defendant was with a single investigating officer. A second officer did not participate in the process until the defendant had already made the inculpatory statements and was there to confirm the confession.

The examiner was extremely persistent and more so after the conduct of the examination. It was clear he was wearing down the defendant once it appeared that the defendant acknowledged something that he was not happy about. In spite of the persistence, at no time did the defendant express an intention of refusing to answer any further questions. The defendant was a 42 year-old man who appeared to be in good

physical and mental health but clearly emotionally upset during the final stages of the interrogation. In spite of that emotional state, he appears to have made no attempt to leave or to terminate the discussion. It is difficult to determine how much of defendant's emotional state is related to the conduct of which he admitted and his strong abhorrence of his wife's conduct.

The fundamental issue, then, is whether a defendant under threat of having untruthful answers to questions exposed by an imperfect scientific device, can amount to police trickery. In accordance with a compilation of cases found at 89 A.L.R.3d 230 on the subject in question, it appears that the representation to a defendant that a polygraph examination will expose any untruthful statements with some degree of accuracy, does not, standing alone amount to such police misconduct as to make a confession inadmissible. This is true when a defendant was told that the polygraph had a likelihood of producing a false confession. *Canada v. State*, (1975) 56 Ala. App. 722, 325 So.2d 513. It was admissible when the defendant was told that the test indicated the defendant was not telling the truth once it is determined that the lie detector test was taken willingly. *People v. Barreto*, (1967) 256 Cal. App. 2d 392, 64 Cal. Rptr. 211. The confession was admissible when the defendant was told that he had been found by the polygraph to be deceptive despite the fact polygraphs are not completely reliable. *State v. Clifton*, (1975) 271 Or. 177, 531 P.2d 256. In *Commonwealth v. Hipple*, (1939), 333 Pa. 33, 3 A.2d 353, a confession was held admissible where the court found that a statement made by a police officer to the defendant that he could not lie to the machine amounted in substance to no more than admonition to tell the truth which was proper. Informing

the defendant of the results of a polygraph examination does not constitute misconduct or overreaching sufficient to raise an issue of an involuntary confession. In *U.S.C.A. Const. Amend. V U.S. v. Beckwith*, 22 F.Supp.2d 1270 (D. Utah 1998), confession admissible after defendant was informed that his answers on a polygraph examination were deceptive. *Roberts v. State*, 102 S.W.3d 482 (Ark. 2003). Examiner's statement that he thought she wasn't being completely truthful was not fundamentally unfair even though the test results had been inconclusive. The subsequent confession was voluntary. *People v. Sohn*, (1989 2d Dept) 248 App. Div. 2d 553, 539 N.Y.S.2d 29.

For purposes of comparison, the court then looks at the cases in which a confession was held not admissible. In each case, there were other factors in addition to the polygraph examination which caused the court to grant motions to suppress. When s 15 year-old boy completed a series of nine polygraph examinations over a 6-hour period, the confession was held inadmissible. *United States ex rel. Monks v. Warden, New Jersey State Prison* (1972 D.C.N.J.) 339 F.Supp. 30. It was ruled inadmissible as a result of a 15-hour polygraph examination where the defendant was given neither food nor rest nor allowed to leave the room. *Bruner v. People*, (1945) 113 Colo. 194, 156 P.2d 111. In *People v. Sammons* (1959) 17 Ill.2d 316, 161 N.E.2d 322, the confession was held inadmissible because of promises of leniency. In *People v. Leonard*, (1977), 59 App. Div.2d 1, 397 N.Y.S.2d 386, the confession was inadmissible because of the defendant's impaired physical and mental condition at the time of the polygraph examination. As was the result of an upset emotional state, improper conduct of the police and the polygraph operator, and an involuntary waiver of *Miranda* rights in *People v. Zimmer*

(1972), 68 Misc.2d 1067, 329 N.Y.S.2d 17. Such is also the case where a 20 year-old mentally retarded defendant, *Henry v. Dees,* (1981 CA5, La.) 658 F.2d 406, a confession obtained by sleep deprivation, coercion and lies, including misrepresentations as to the results of polygraph, *State v. Sawyer,* 561 So.2d 278, and the defendant being told the polygraph is foolproof, *State v. Davis,* (1986), Minn. App. 381 N.W.2d 86.

The court is satisfied that the statement made by the defendant, in evidence, was freely and voluntarily made, not obtained by direct or implied promises, threats or a coercive totality of the circumstances.

The entry will be:

The defendant's motion to suppress is DENIED.

Dated: ~~February~~ *February 11*_____, 2009

Donald H. Marden
Justice, Superior Court

STATE OF MAINE

vs

GREGORY KIMBALL
43 UNITY RD
BENTON ME 04901

DOB: 11/07/1965
Attorney: JAMES BILLINGS
         LIPMAN & KATZ & MCKEE, PA
         227 WATER STREET
         PO BOX 1051
         AUGUSTA ME 04332-1051
         APPOINTED 05/28/2008

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CR-2008-00211

**DOCKET RECORD**

State's Attorney: EVERT FOWLE

Filing Document: INDICTMENT
Filing Date: 03/20/2008

Major Case Type: FELONY (CLASS A,B,C)

## Charge(s)

1  GROSS SEXUAL ASSAULT                        07/01/2003 WATERVILLE
Seq 637    17-A  253(1)(B)        **Class A**


2  UNLAWFUL SEXUAL CONTACT                      07/01/2003 WATERVILLE
Seq 8400  17-A  255-A(1)(E)       **Class C**


3  GROSS SEXUAL ASSAULT                        07/01/2003 WATERVILLE
Seq 637    17-A  253(1)(B)        **Class A**


## Docket Events:

03/20/2008 FILING DOCUMENT -  INDICTMENT FILED ON 03/20/2008

         TRANSFER -  BAIL AND PLEADING GRANTED ON 03/20/2008

         TRANSFER -  BAIL AND PLEADING REQUESTED ON 03/20/2008

03/20/2008 Charge(s): 1,2,3
         WARRANT -  ON COMP/INDICTMENT ORDERED ON 03/20/2008

03/20/2008 BAIL BOND - $20,000.00 CASH BAIL BOND SET BY COURT ON 03/20/2008

03/20/2008 BAIL BOND - $50,000.00 SURETY BAIL BOND SET BY COURT ON 03/20/2008

03/20/2008 Charge(s): 1,2,3
         WARRANT -  ON COMP/INDICTMENT ISSUED ON 03/20/2008

         CERTIFIED COPY TO WARRANT REPOSITORY
04/04/2008 Charge(s): 1,2,3
         WARRANT -  ON COMP/INDICTMENT EXECUTED ON 04/02/2008

04/07/2008 Charge(s): 1,2,3
         HEARING -  ARRAIGNMENT SCHEDULED FOR 04/04/2008 @ 1:00

04/07/2008 Charge(s): 1,2,3
HEARING - ARRAIGNMENT HELD ON 04/04/2008
NANCY MILLS , JUSTICE
READING WAIVED. DEFENDANT INFORMED OF CHARGES. COPY OF INDICTMENT/INFORMATION GIVEN TO
DEFENDANT. 21 DAYS TO FILE MOTIONS
04/07/2008 Charge(s): 1,2,3
PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 04/04/2008


04/07/2008 Charge(s): 1,2,3
TRIAL - DOCKET CALL SCHEDULED FOR 05/07/2008 @ 10:45


04/07/2008 BAIL BOND - $20,000.00 CASH BAIL BOND SET BY COURT ON 04/04/2008
NANCY MILLS , JUSTICE
OR SURETY $40,000
04/07/2008 Charge(s): 1,2,3
MOTION - MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 04/04/2008


04/07/2008 Charge(s): 1,2,3
WARRANT - ON COMP/INDICTMENT RETURNED ON 04/07/2008


04/07/2008 BAIL BOND - $40,000.00 SURETY BAIL BOND FILED ON 04/07/2008


Bail Amt: $40,000          Surety Type: REAL ESTATE                    Surety Value: $0
County: KENNEBEC           County Book ID: 9690 Book Page: 233
Date Bailed: 04/07/2008    Prvdr Name: TIMOTHY BICKFORD
Lien Issued: 04/07/2008    Rtrn Name: TIMOTHY BICKFORD
Lien Discharged:
04/09/2008 Charge(s): 1,2,3
MOTION - MOTION FOR APPOINTMENT OF CNSL GRANTED ON 04/08/2008
JOSEPH M JABAR , JUSTICE
COPY TO PARTIES/COUNSEL
04/09/2008 Party(s): GREGORY KIMBALL
ATTORNEY - APPOINTED ORDERED ON 04/08/2008


Attorney: MEGAN HANLEY
04/25/2008 MOTION - MOTION FOR ENLARGEMENT OF TIME FILED BY DEFENDANT ON 04/25/2008


04/28/2008 MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 04/28/2008
JOHN NIVISON , JUSTICE
IT IS HEREBY ORDERED THAT THE DEADLINE TO SUBMIT MOTIONS IS EXTENDED FOR A PERIOD OF TWO
WEEKS, OR UNTIL MAY 9, 2008. COPY TO PARTY OF RECORDS.
05/01/2008 MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 05/01/2008


05/06/2008 MOTION - MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 05/01/2008


05/06/2008 MOTION - MOTION FOR APPOINTMENT OF CNSL GRANTED ON 05/05/2008
JOSEPH M JABAR , JUSTICE
COPY TO PARTIES/COUNSEL
                                                        REVISED TO PARTIALLY INDIGENT
05/06/2008 Party(s): GREGORY KIMBALL
ATTORNEY - PARTIALLY INDIGENT ORDERED ON 05/05/2008

Attorney: MEGAN HANLEY
05/07/2008 MOTION - MOTION TO CONTINUE GRANTED ON 05/07/2008
NANCY MILLS , JUSTICE
Defendant Present in Court

COPY TO PARTIES/COUNSEL
05/07/2008 Charge(s): 1,2,3
TRIAL - DOCKET CALL HELD ON 05/07/2008
NANCY MILLS , JUSTICE
Reporter: JANETTE COOK
Defendant Present in Court
05/07/2008 MOTION - MOTION FOR EXTENSION OF TIME FILED BY DEFENDANT ON 05/07/2008

05/07/2008 MOTION - MOTION FOR EXTENSION OF TIME GRANTED ON 05/07/2008
NANCY MILLS , JUSTICE
COPY TO PARTIES/COUNSEL
05/07/2008 Charge(s): 1,2,3
TRIAL - DOCKET CALL SCHEDULED FOR 06/02/2008 @ 10:45

05/22/2008 MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 05/21/2008

05/22/2008 MOTION - MOTION FOR WITHDRAWAL OF CNSL FILED BY COUNSEL ON 05/22/2008

05/22/2008 MOTION - MOTION FOR ENLARGEMENT OF TIME FILED BY DEFENDANT ON 05/21/2008

05/28/2008 MOTION - MOTION FOR WITHDRAWAL OF CNSL GRANTED ON 05/28/2008
NANCY MILLS , JUSTICE
COPY TO PARTIES/COUNSEL                                              ALL DEADLINES
ARE EXTENDED UNTIL 20 DAYS FROM THE DATE THAT NEW COUNSEL IS APPOINTED.
05/28/2008 Party(s): GREGORY KIMBALL
ATTORNEY - WITHDRAWN ORDERED ON 05/28/2008

Attorney: MEGAN HANLEY
05/28/2008 Party(s): GREGORY KIMBALL
ATTORNEY - APPOINTED ORDERED ON 05/28/2008

Attorney: JAMES BILLINGS
05/30/2008 MOTION - MOTION TO CONTINUE GRANTED ON 05/22/2008
NANCY MILLS , JUSTICE
COPY TO PARTIES/COUNSEL
05/30/2008 MOTION - MOTION FOR ENLARGEMENT OF TIME DENIED ON 05/22/2008
NANCY MILLS , JUSTICE
COPY TO PARTIES/COUNSEL
05/30/2008 Charge(s): 1,2,3
TRIAL - DOCKET CALL CONTINUED ON 05/22/2008
NANCY MILLS , JUSTICE
06/19/2008 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 06/18/2008

06/19/2008 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 08/14/2008 @ 8:30

NOTICE TO PARTIES/COUNSEL
06/23/2008 MOTION - MOTION TO AMEND BAIL FILED BY DEFENDANT ON 06/23/2008

06/23/2008 MOTION - MOTION FOR FUNDS FILED BY DEFENDANT ON 06/23/2008

          EX-PARTE
06/25/2008 MOTION - MOTION FOR FUNDS GRANTED ON 06/24/2008
          DONALD H MARDEN , JUSTICE
          COPY TO DEFENDANT ON 6/25/08

                                              TOTAL OF $1,000.00.
06/26/2008 HEARING - MOTION TO AMEND BAIL SCHEDULED FOR 07/08/2008 @ 8:30

          NOTICE  TO PARTIES/COUNSEL
08/01/2008 AUDIT - AUDIT REPORT CHART_OF_ACCOUNT EDI ON 08/01/2008 @ 10:41

          RV APPR ABRV:GF; OLD OVERRIDE CODE:NONE; NEW OVERRIDE CODE:NONE; OLD AMT OVERRIDE:0; NEW
          AMT OVERRIDE:0; USER ID:PMOORE
08/05/2008 MOTION - MOTION TO CONTINUE FILED BY STATE ON 08/05/2008

08/06/2008 MOTION - MOTION TO CONTINUE GRANTED ON 08/06/2008
          NANCY  MILLS , JUSTICE
          COPY TO PARTIES/COUNSEL
08/06/2008 HEARING - MOTION TO SUPPRESS CONTINUED ON 08/06/2008

08/06/2008 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 08/26/2008 @ 1:00

          NOTICE  TO PARTIES/COUNSEL
08/22/2008 HEARING - MOTION TO SUPPRESS CONTINUED ON 08/22/2008
          NANCY  MILLS , JUSTICE
09/16/2008 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 11/14/2008 @ 8:30

          NOTICE  TO PARTIES/COUNSEL
10/20/2008 HEARING - MOTION TO SUPPRESS NOTICE SENT ON 10/20/2008

11/10/2008 MOTION - MOTION FOR FUNDS FILED BY DEFENDANT ON 11/10/2008

11/13/2008 MOTION - MOTION FOR FUNDS GRANTED ON 11/12/2008
          M MICHAELA MURPHY , JUSTICE
          COPY TO PARTIES/COUNSEL
11/18/2008 HEARING - MOTION TO SUPPRESS HELD ON 11/14/2008
          DONALD H MARDEN , JUSTICE
          Reporter: JANETTE COOK
          Defendant Present in Court
11/18/2008 MOTION - MOTION TO SUPPRESS UNDER ADVISEMENT ON 11/14/2008

02/18/2009 MOTION - MOTION TO SUPPRESS DENIED ON 02/11/2009
          DONALD H MARDEN , JUSTICE
          COPY TO PARTIES/COUNSEL
02/18/2009 ORDER - COURT ORDER FILED ON 02/17/2009
          DONALD H MARDEN , JUSTICE
          ORDER ON MOTION TO SUPPRESS
02/18/2009 Charge(s): 1,2,3
          TRIAL - DOCKET CALL SCHEDULED FOR 04/07/2009 @ 8:30


          **Receipts**

| 05/28/2008 | Attorney Payment | $50.00 | CA | paid. |
| 08/01/2008 | Attorney Payment | $100.00 | CK | paid. |

A TRUE COPY
ATTEST: _____
                    Clerk

.